

**FILED**
**Aug 19, 2025**
**07:10 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION

## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Damon Curry Morris | Docket No. 2022-08-1069 |
| v. | State File No. 73213-2022 |
| Select Services, et al., | |
| and | |
| Troy Haley, Administrator of the Bureau of Workers' Compensation Subsequent Injury and Vocational Recovery Fund | |
| Appeal from the Court of Workers' Compensation Claims Thomas L. Wyatt, Judge | |

---

### Reversed and Remanded

---

In this interlocutory appeal, the employee claimed he suffered arm and shoulder injuries due to an alleged workplace assault committed by his supervisor. The employer denied the assault occurred and denied the employee sustained any work-related injuries. Pursuant to a prior expedited hearing order, the employer provided a panel of physicians and authorized limited medical treatment. Thereafter, an MRI revealed a small partial tear in the left rotator cuff. The employer declined to approve additional treatment recommended by the authorized physician and declined to approve the authorized physician's referral to a specialist. As a result, the employee requested another expedited hearing, after which the trial court ordered the employer to authorize the referral to a specialist for evaluation and treatment of the left shoulder despite acknowledging the lack of any expert medical evidence indicating that the employee's left shoulder condition was primarily caused by the alleged workplace assault. Upon careful consideration of the record, we reverse the trial court's order and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Eric E. Lindquester, London, Kentucky, for the employer-appellant, Select Services

Damon Curry Morris, Memphis, Tennessee, employee-appellee, pro se

Timothy Kellum, Memphis, Tennessee, for the appellee, Subsequent Injury and Vocational Recovery Fund

**Factual and Procedural Background**

Damon Curry Morris ("Employee") worked for Select Services ("Employer") in Memphis, Tennessee as an administrative assistant. On September 21, 2022, Employee alleged he suffered a workplace injury when his supervisor grabbed his arm during a confrontation. After Employee reported to work that morning, Employee's supervisor, Angelia Skipper, announced she was restructuring the business and had eliminated Employee's position. Ms. Skipper offered Employee the opportunity to work as a "Direct Support Professional," but he declined. Employee asked whether he was being terminated or laid off, but Ms. Skipper allegedly declined to answer that question. Thereafter, the discussion escalated into a confrontation. Ms. Skipper advised Employee she would pay him for the day but that he needed to leave the premises because she had to leave the office. According to one of his written statements filed in support of his petition for benefits, Employee walked to his desk and "gathered my belongings. I placed my backpack on my back over my right shoulder, I picked up my lunch with my right hand, and picked up the stack of papers with my left hand." Ms. Skipper then advised him that any materials belonging to Employer needed to be left behind, including any work-related papers. Employee stated that Ms. Skipper approached him from behind, grabbed his left arm near the wrist, tried to take the papers from his left hand, and a struggle ensued. Employee responded that she was assaulting him, and she let go. Employee then left the office and called the police.

Employee acknowledged suffering from numerous preexisting medical conditions, including congestive heart failure, kidney disease, pulmonary embolism, renal carcinoma, and a kidney transplant. He required regular dialysis treatments and apparently had a port in his left arm that Employee described as an "AV fistula."[1] According to Employee, when Ms. Skipper grabbed his left arm, it was near the site of the AV fistula. Employee claimed that bruising began to form on his forearm immediately following the confrontation, and

---

[1] An AV fistula is formed by "a procedure that connects an artery to a vein in preparation for dialysis." *Preparing for Dialysis*, https://www.yalemedicine.org/conditions/preparing-dialysis-av-fistula (last visited Aug. 15, 2025).

that he showed the bruising to a co-worker, Patricia Spencer, and to the police officers who responded to his call.

According to the police report, Employee's description of the event to the officer differed somewhat from his written statement. The police report suggests that Employee was placing personal items in a box in preparation to leave when Ms. Skipper demanded to see the items he was placing in the box. According to that report, Ms. Skipper "approached him from behind, grabbed his personal documents, and grabbed and squeezed his left arm extremely tight, resulting in pain and reddish bruising." The officer confirmed in his report that he "observed discoloration and bruising on victim['s] left arm." Employee produced photographs of his left arm in support of his claim. However, neither Employee's written statement nor the police report contained any reference to complaints concerning the left shoulder.

After the work incident, Employee sought treatment at an emergency room. According to the emergency room records, Employee reported on September 23, 2022, that he was experiencing "left arm pain and bruising that radiates from the forearm up the extremity." He denied any neck pain, back pain, weakness, numbness, or any other symptoms. An ultrasound of the left arm showed no acute abnormality, and x-rays showed "no acute fracture or malalignment." The physical examination showed left forearm tenderness but no swelling. There were no physical findings or diagnoses related to the left shoulder. Employee was diagnosed with "pain of left upper extremity."

Following unsuccessful mediation, Employee filed a request for an expedited hearing and a motion to add Tennessee's Subsequent Injury and Vocational Recovery Fund ("the Fund") as a party-defendant. In a February 2023 order, the court granted Employee's motion to add the Fund.

In May 2023, approximately eight months after the alleged incident, Employee sought treatment on his own with Dr. Shawn Price at OrthoSouth. Employee advised Dr. Price that not only did his supervisor grab his left wrist, but she also twisted his left arm. He reported suffering from pain in his wrist and "anterior shoulder" following the work incident. Employee described his left shoulder pain as "sharp and achy," but admitted he was not currently taking any pain medications for his symptoms. Dr. Price ordered an MRI of the left shoulder, which revealed a "small high-grade partial tear of the anterior supraspinatus attachment."

In October 2023, Employee was seen by Dr. Price's colleague at OrthoSouth, Dr. Thomas Giel. Dr. Giel concluded Employee was not a good surgical candidate and recommended conservative treatment, including physical therapy. After undergoing some therapy, Employee reported to Dr. Giel's nurse practitioner in November 2023 that his symptoms were "30% better." As a result, she recommended additional therapy.

3

Following a period of discovery, the trial court issued an expedited hearing order in March 2024 in which it determined Employee was likely to prevail at trial in proving the occurrence of a compensable event. As a result, it ordered Employer to provide Employee a panel of physicians from which Employee could select a provider "to treat and evaluate his alleged work-related injury." Employee's claim for the payment of past medical bills and temporary disability benefits was denied at that time. That order was not appealed.

Thereafter, Employer provided a panel of physicians, from which Employee selected Dr. John Goodfred. In an April 2024 report, Dr. Goodfred stated that Employee reported having "sustained a left shoulder injury while at work." Employee told Dr. Goodfred he had previously sought treatment on his own with Dr. Giel, who had diagnosed a rotator cuff tear. However, according to Employee, he was unable to undergo surgery to repair this condition due to his co-morbid cardiac and renal conditions. Consequently, Dr. Goodfred prescribed physical therapy and referred Employee back to Dr. Giel for further evaluation and treatment.

Employer declined to authorize any further treatment in response to Dr. Goodfred's report. It denied Employee's rotator cuff condition was causally related to the alleged work incident, which it maintained did not occur as described by Employee.

Thereafter, Employee requested a second expedited hearing. In support of his request for benefits, he filed four Rule 72 Declarations, three of which were filed before the first expedited hearing. In the first, dated February 17, 2023, Employee wrote that "[t]he assault caused significant bruising to the left arm." There was no mention of an alleged twisting incident or any symptoms related to the left shoulder. In a second statement dated July 21, 2023, Employee wrote he had sustained "severe bruising to left arm," with no mention of left shoulder symptoms. In the third statement, dated January 5, 2024, Employee wrote that he had suffered from "[s]evere contusion and bruising to the left arm." Again, there was no mention of the left shoulder or an alleged twisting incident. Finally, in a Rule 72 Declaration dated February 3, 2025, Employee described "significant bruising to left arm." It also contained the statement, "Noticed [tear] in left shoulder," but it did not describe any alleged twisting incident.

For its part, Employer denied that the alleged assault occurred. Ms. Skipper signed an affidavit in May 2025 stating, in relevant part, as follows:

9. I did not touch or grab [Employee] on September 21, 2022.

10. There has never been any physical altercation between [Employee] and myself on that day or on any date.

Ms. Skipper also alleged in her affidavit that, after telling Employee she had eliminated his position, he threatened to "call the media" and "do a press conference." She

4

further asserted Employee accused her of discriminating against him and stated he would be contacting a lawyer.[2]

Following the second expedited hearing, the trial court issued a June 4, 2025 order in which it concluded Employer had failed to comply with its previous order for medical benefits. Specifically, the trial court determined that "allowing [Employee] to select Dr. Goodfred from a panel and then abruptly denying the claim after one visit does not comply with the Court's previous expedited hearing order." However, the court also agreed with Employer that Employee had not come forward with any evidence that his left shoulder condition was causally related to the alleged work incident. Nevertheless, the court ordered Employer to "promptly authorize and schedule the physical therapy recommended by Dr. Goodfred and an appointment with Dr. Giel." Employer has appealed.

**Standard of Review**

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

**Analysis**

This appeal requires us to consider at what point in the course of litigation an employee bears the burden of coming forward with evidence that he or she is likely to prevail at trial in proving the medical condition requiring treatment arose primarily from the alleged work-related incident. Previously, we have addressed this issue in other factual contexts. For example, we first addressed an employee's entitlement to a panel of physicians in *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk.

---

[2] In preparation for the first expedited hearing, Ms. Skipper signed an affidavit in November 2023 describing the incident. In her affidavit, she did not discuss the alleged physical altercation and did not respond to Employee's description of that part of the incident. Thus, at the first expedited hearing, Employee's testimony regarding the alleged physical altercation was unrefuted.

Comp. App. Bd. LEXIS 6 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). In *McCord*, the employee asserted she had sustained an injury while lifting boxes at work. *Id.* at *3. She did not immediately report the incident to the employer, but she sought medical treatment at an emergency room twice over the following two days. *Id.* She then reported the work accident to her employer several days later. *Id.* at *4-5. On appeal, we considered whether the employee was entitled to medical benefits and stated as follows:

> Employee testified without contradiction that she felt symptoms in her low back while lifting boxes at work on October 3, 2014. The record is uncontradicted that she visited the emergency room twice over the following two days complaining of low back or right shoulder symptoms. Employer's representative . . . admitted that Employee's job duties included lifting boxes . . . . The on-site supervisor . . . stated that Employee attempted to give him "medical paperwork" on October 7, and that he instructed her to give the paperwork directly to her employer. Under the particular circumstances of this case, Employee has come forward with sufficient evidence entitling her to a panel of physicians. However, whether the alleged work accident resulted in a compensable injury has yet to be determined.

*Id.* at *17. Thus, in *McCord*, the occurrence of the work accident and the complaints of back pain were unrefuted. Since we issued the *McCord* opinion, it has been cited on numerous occasions for the proposition that, to be entitled to a panel of physicians, an employee must timely report a work-related accident and express a need for medical care, yet need not produce evidence, at that early stage of the case, that he or she suffered a compensable injury arising primarily from the work accident. *See also* Tenn. Comp. R. & Regs. 0800-02-01-.06(1) (2018) (stating an employee is entitled to a panel of physicians "[f]ollowing receipt of notice of a workplace injury and the employee expressing a need for medical care"). Here, as of the date of the March 2024 expedited hearing, Employee's testimony regarding the alleged physical altercation was unrefuted, and the court ordered Employer to provide a panel of physicians.

Conversely, in *Berdnik v. Fairfield Glade Community Club*, No. 2016-04-0328, 2017 TN Wrk. Comp. App. Bd. LEXIS 32 (Tenn. Workers' Comp. App. Bd. May 18, 2017), we reversed a trial court's interlocutory order for additional medical treatment. In that case, the employee worked at a country club restaurant. *Id.* at *2. She asserted that, while reaching into an ice machine to fill a five-gallon bucket with ice, she felt "something" in her back. *Id.* at *2-3. She did not seek medical treatment immediately but reported the incident to her supervisor four days later. *Id.* at *3. Her employer did not provide a panel of physicians at the time she reported the incident and did not authorize any medical care. *Id.* As a result, she sought treatment on her own. *Id.* An MRI completed the following month showed evidence of degenerative disc disease and central canal stenosis, as well as evidence of a prior fusion surgery. *Id.* Her claim for workers' compensation benefits was denied due to "chronic back issues[,] not work related." *Id.* at *3-4. Thereafter, the

employer sent the employee for a medical evaluation with an orthopedic physician of its choosing. *Id.* at *4. The physician concluded that there was no evidence of an acute low back injury and that the employee had suffered, at most, a temporary exacerbation of her preexisting condition. *Id.* Following an expedited hearing, however, the trial court ordered the employer to authorize additional medical care despite its finding that the employee "had not established she would likely prevail in proving a compensable injury." *Id.* at *5-6. We reversed that determination, concluding that the employee had not satisfied her burden of proof at that interlocutory stage of the case. *Id.* at *17; *see also Shannon v. United Parcel Service, Inc.*, No. 2015-06-0052, 2015 TN Wrk. Comp. App. Bd. LEXIS 47, at *8 (Tenn. Workers' Comp. App. Bd. Dec. 3, 2015) (finding the lesser evidentiary burden at an expedited hearing does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment).

Moreover, in *Pool v. Jarmon D&Q Transport*, No. 2015-06-0510, 2016 TN Wrk. Comp. App. Bd. LEXIS 1 (Tenn. Workers' Comp. App. Bd. Jan. 4, 2016), we addressed whether an employee is entitled to a "causation opinion" paid for by the employer. In *Pool*, the employee began suffering from headaches and respiratory problems while operating the employer's shuttle vans. *Id.* at *2. The employee alleged these conditions were caused by "mold in the vehicles at work." *Id.* The employer provided a panel of physicians, and the selected physician diagnosed "allergic rhinitis, cause unspecified." *Id.* at *4. Following an expedited hearing, the trial court concluded that the employee had not come forward with sufficient evidence of a compensable injury, but it ordered the employer to provide a causation evaluation with a specialist. *Id.* at *5. On appeal, we vacated the trial court's order, stating:

> While an injured worker who meets the applicable statutory requirements is entitled to medical benefits, there is no "right to a causation opinion" as such. If a trial court determines that medical benefits are appropriate, the court can order the initiation of such benefits. However, *it is the parties' responsibility to secure expert opinions or other evidence necessary to address any applicable burden of proof*.

*Id.* at *9 (emphasis added).

Here, following the alleged confrontation with his supervisor, Employee reported left arm pain and bruising near the site of an AV fistula used to facilitate dialysis treatment. However, Employee did not initially describe a "twisting" injury and did not complain of any left shoulder symptoms during his initial medical evaluations. He sought treatment on his own and has been seen by at least two orthopedic physicians, including Dr. Price and Dr. Giel. Eight months after the alleged incident, Employee told Dr. Giel he suffered from shoulder pain due to a twisting incident that had occurred during the confrontation with his supervisor. To date, however, neither Dr. Price nor Dr. Giel have offered an opinion as to the primary cause of the left shoulder condition.

Moreover, Employer provided Employee a panel of physicians, and he selected Dr. Goodfred. Employee told Dr. Goodfred he had suffered a left shoulder injury at work, but Dr. Goodfred did not offer an opinion as to the primary cause of the left shoulder condition. Thus, to date, Employee has seen an emergency room provider and three physicians, none of whom have offered any type of causation opinion. Hence, this is not a case in which an injured worker has been denied any opportunity for a medical evaluation following a report of a work-related accident. Instead, Employee has been evaluated on several occasions for the work incident, and no physician has opined that Employee suffered a left shoulder injury that arose primarily from the alleged altercation at work.

In sum, under the circumstances of this case, we conclude it is Employee's responsibility as the party seeking benefits to come forward with sufficient evidence indicating a likelihood of prevailing at trial in proving: (1) the occurrence of a left shoulder injury at work; and (2) that the need for medical treatment for the left shoulder arose primarily out of the work incident. Although Employee is self-represented, we must apply the same evidentiary and procedural standards as are applied to represented parties. *Burnette v. K-mart Corp.*, No. 2014-02-0020, 2015 TN Wrk. Comp. App. Bd. LEXIS 2, at *6 (Tenn. Workers' Comp. App. Bd. Jan. 20, 2015). Here, we conclude Employee has not met his burden of proof at this interlocutory stage of the case.

## Conclusion

For the foregoing reasons, we reverse the trial court's order and remand the case. Costs on appeal are taxed to Employee.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Damon Curry Morris | Docket No. 2022-08-1069 |
| v. | State File No. 73213-2022 |
| Select Services, et al. | |
| and | |
| Troy Haley, Administrator of the Bureau of Workers' Compensation Subsequent Injury and Vocational Recovery Fund | |
| Appeal from the Court of Workers' Compensation Claims Thomas L. Wyatt, Judge | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of August, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Eric E. Lindquester | | | | X | eric.lindquester@libertymutual.com rachel.dornier@libertymutual.com |
| Damon Curry Morris | | | | X | damon.currymorris@gmail.com |
| Timothy Kellum | | | | X | timothy.kellum@tn.gov |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov